No. 18,920.

A. C. KREITZER et al., *Appellees,* v. THE MONARCH
PORTLAND CEMENT COMPANY et al., E. A. NOSSAMAN
et al., Intervenors, *Appellees,* and WILLIAM KEITH
et al., Intervenors, *Appellants.*

### SYLLABUS BY THE COURT.

1. CORPORATION — *Receiver — Recognition by Stockholders—Es-
topped to Deny Validity of Appointment.* Stockholders in a
corporation who recognize its receiver by intervening in the
suit in which he was appointed and asking that he be directed
to sell part instead of all the assets can not be heard after-
wards to contend that his appointment was unauthorized.

2. SAME. After a receiver of a corporation had been appointed
to conserve its estate and conduct its affairs as directed by
the court, and after he had by order of the court sold its
assets, the stockholders by the requisite vote ratified the
sale and resolved that inasmuch as the corporation had
liquidated its obligations and had no outstanding indebted-
ness, it should be and was thereby dissolved, and the receiver
reported such action to the court, suggesting a decree dis-
solving such corporation, which decree was entered. *Held,*
that such action by the stockholders rendered the questions
presented by the intervenors as to the authority to appoint
the receiver, the validity of the sale made by him, errors
occurring at the trial, and the propriety of such decree, no
longer practical but academic.

3. SUPREME COURT—*Not a Moot Court.* It is not the province of
this court to decide moot questions.

Appeal from Sedgwick district court, division No. 1;
THOMAS C. WILSON, judge. Opinion filed July 7, 1914.
Affirmed.

*Kos Harris, V. Harris, William Keith,* and *Dempster
O. Potts,* all of Wichita, for the appellants.

*Paul Brown,* and *Silas Brown,* both of Wichita, for
the appellees.

*R. L. Holmes, Chas. G. Yankey,* and *W. E. Holmes,* all
of Wichita, for the receiver.

The opinion of the court was delivered by

SMITH, J.: July 10, 1912, Kreitzer and Roll filed a petition against the Monarch Portland Cement Company, alleging, among other things, that they were owners of 907¾ shares and 758 shares respectively of the capital stock of the defendant, a Kansas corporation capitalized at four million dollars, two million being common and two million preferred stock; that the company was the owner of property worth from one to one and one-fourth million dollars, that financial depression and overproduction of cement with unreasonable competition had caused the defendant to operate its plant for the past two years at a loss of more than $500,000; that with the preferred stock went an agreement called "Special Contract," entitling the holder to an amount of free cement equal to the face value of such preferred stock, which contract amounted to an agreement to pay an unearned dividend and was *ultra vires* and void; that under such contract cement amounting to $180,000 had been withdrawn; that the taxes for the year 1911 of more than $9000 were due on real estate which would be sold unless paid; that the company owed unsecured creditors about $60,000 past due; that attachment suits were threatened which would endanger the solvency of the company; that there were outstanding mortgages of $39,100 and the company was in imminent danger of insolvency, and would become insolvent and the creditors and stockholders caused great loss unless protected by the court. The prayer was for the appointment of a receiver to take charge, marshal assets, sell off property, liquidate the debts, preserve the plant intact and continue business under the directions of the court.

The answer, signed by William Keith, attorney for the defendant, was an admission of all the allegations contained in the petition, a consent to a speedy trial and a confession that a receiver should be appointed as

prayed for. On July 10, 1912, in consideration of the application and answer and proofs adduced, it was found that the company was not insolvent but in imminent danger of insolvency, and that the petition was generally true, and a receiver was appointed in accordance with the prayer of the petition, the journal entry being approved by the attorneys for the plaintiffs and by William Keith, attorney for the defendant. On June 6, 1913, the receiver made an application to sell property, reciting that he had collected upwards of $50,000 of which there remained upwards of $9000 on hand; that he had bills receivable amounting to more than $33,000 and accounts receivable amounting to more than $24,000, and certain miscellaneous real estate of the properties he had not been able to sell; that the estate was in debt on open account more than $34,-000, that there were taxes due amounting to more than $7000, and reciting certain other claims against the estate and setting out various other matters and exhibits. On June 18, 1913, this application came on for hearing, William Keith appearing personally among others, whereupon it was stated by counsel for the present appellants that the stockholders Keith and Connet desired to file a petition in intervention; that they represented about 900 shares of common stock and about 100 shares of preferred—the purpose being to order the receiver to sell off certain miscellaneous properties and realize enough money to take care of the debts and put the plant in operation. After some further colloquy the present appellants filed their petition in intervention setting up that they were owners of certain common and preferred stock; that they with others had an interest in the prevention of the sale of the plant and its main assets; that under the plaintiffs' petition the court had no jurisdiction to order the sale thereof; that the company had by its attorney, William Keith, answered consenting to the appointment of a receiver and continuing the business, but had not con-

sented to a sale of all the assets; that the company was solvent and that the order of sale requested by the receiver would tend to destroy the value of the intervenors' stock, and other allegations touching the assets and conditions of the company followed by the averment that the aim of the receiver, who had been appointed to conserve the assets, was to produce dissolution and wind up the affairs contrary to the object and aim of the original petition and prayer. They asked that his application be denied and that he be directed to sell certain items of property and report progress. On June 23, 1913, a continuation of the proceedings was had. Other parties had filed an intervening petition, and after the taking of considerable testimony and an amendment to the intervenors' petition, on June 28 judgment was rendered. The court found that the prayer of the intervening petition should be denied and that the allegations thereof were not sustained by the evidence; that the application of the receiver for the sale was true and should be allowed. It was therefore adjudged that all the unsold property of the company be sold and that the officers of the company execute deeds of conveyance in accordance with such sale; that from the proceeds the costs and taxes should first be paid and then the claims of certain creditors satisfied, and the remainder, if any, should belong to the defendant company; that the stockholders who had an interest in the assets and property of the company should in the event of dissolution have certain prior claims therein set forth. The sale was reported on July —, to which report the intervenors filed objections and which sale was confirmed July 25. The assets brought $175,000. On August —, 1913, the receiver applied for a modification of the order of confirmation, which was granted. Notice of appeal was served on the — day of July, 1913. On February 13, 1914, the receiver filed an extended report to the effect that the assets of the company had been converted into cash, that the expenses

of the receiver had been practically paid; that the purchaser was now able to furnish receipts and releases on the part of all the preferred stockholders except shares amounting to the face value of $92,700; that on September 10, 1913, the stockholders of the company at the annual meeting upon written notice resolved to ratify the action of the receiver in the sale of the assets, more than two-thirds voting therefor, and also by a similar vote of more than two-thirds of the outstanding shares of stock resolved to dissolve the corporation and divide its assets among the persons legally entitled thereto. The report suggested that an order of dissolution be made directing the apportioning of the assets in accordance with such resolution. On February 21, 1914, the court found that the objections filed by the intervenors were not supported by the evidence; that the receiver's report was correct, and that by reason of the resolutions referred to it would be to the best interest of the corporation that it be dissolved, and such dissolution and distribution of the assets were adjudged.

The principal errors now urged are the appointment of a receiver, the order to sell the property, and the decree of dissolution and distribution. Certain other complaints touching rulings on evidence and errors occurring at the trial are found to be without sufficient merit to warrant separate consideration.

It is argued that without an actual showing of insolvency the court was not authorized to appoint a receiver, and that without statutory authority it was without jurisdiction to decree dissolution. It will be observed that the petition alleged imminent danger of insolvency and a condition of affairs said to require the protection of the court for the benefit of the creditors and stockholders, one of the causes of this condition being the unlawful "special contract" attached to the shares of preferred stock. Not only were all of the allegations of the petition expressly admitted by one of the present intervenors as attorney for the company,

but the receiver remained in office from July 10, 1912, until July 6, 1913, before making application to sell the assets, and it does not appear that either of the intervenors made any objections to the proceeding until June 13, 1913, nearly a year after the receiver had been appointed, and then their petition in intervention expressly sought the authority of the court for a sale by the receiver of a portion instead of all the assets. After this certain other attorneys appeared and intervened for a reorganization committee representing 50 per cent of the common stock and 75 per cent of the preferred stock who desired the assets all sold, and after full consideration the court ordered the sale as prayed for by the receiver, directing that the entire assets be sold, though not in bulk. Having to the extent indicated recognized the truth of the petition for the appointment of the receiver and the authority of the court over him, it does not seem that the appellants are in position now to question his appointment.

Neither can it avail them to urge error in decreeing the very dissolution which the stockholders had brought about. No question is made that the stockholders, by a two-thirds vote, had the power to do this (Gen. Stat. 1909, §§ 1714, 1727), and having exercised such power, and then through the officer of the court in charge of the assets having requested or suggested a decree of dissolution, a stockholder who was fairly outvoted has no standing to question the effectuality of such dissolution; and whether or not the court had jurisdiction to enter a decree in accordance therewith, such a decree was entered and was recognized and became an accomplished fact. Hence it is unnecessary to inquire as to the power of the court to appoint the receiver or the validity of its order to sell the assets, for these matters, like the alleged errors as to denying the petition of the intervenors and the admission of evidence touching the stock holdings, have now become moot, and whatever view we might take of them would be merely academic so far as they could affect the pres-

ent situation.  A reversal of the decree of dissolution and order of distribution would leave the corporation still dissolved by the requisite vote of the stockholders and the distribution already substantially made.  It is not our province to decide moot cases.  (*Kansas City v. The State, ex rel.*, 66 Kan. 779, 71 Pac. 1127; *Teterick v. Parsons*, 63 Kan. 879, 64 Pac. 1028, 90 Kan. 21; *Bauman v. Mason*, 91 Kan. 728, 139 Pac. 406.)

The judgment is affirmed.